# James M. Anderson & Co.
## v.
## William H. Dezonia.

*Special Contract for Services of Traveling Salesman — Evidence — Destroyed Letter.*

In an action to recover for services performed by the plaintiff as a traveling salesman on the basis of an alleged special contract for a salary, it is *held:* That the evidence does not sustain the claim of the plaintiff; that the offer made through an employe of the defendants by letter, which the plaintiff destroyed, contemplated further action before the amount to be paid for his services should be fixed; and that the plaintiff can only recover the value of his services.

[Opinion filed June 7, 1887.]

Appeal from the Circuit Court of Jackson County; the Hon. O. A. Harker, Judge, presiding.

Mr. W. W. Barr, for appellants.

Messrs. Smith & Stephens, for appellee.

Pillsbury, J. This action was commenced by appellee to recover for services performed as a traveling salesman for the appellants, who were wholesale grocers in St. Louis, Missouri. His claim is founded upon an alleged special contract for a salary made by one Carter, an employe of appellants, by letter to appellee, while at Cairo. This letter was destroyed by the appellee soon after its receipt, and on the trial he was allowed to testify to its contents.

According to his testimony he wrote to Carter, they being old acquaintances, inquiring if he knew of any opening, not asking, however, for any position, and in reply received a letter stating that the defendants wanted a man to travel in northeast Missouri; that they had discharged a man who had that territory because he did not report collections; that for him

to come up at once as the territory had been idle since the 1st of January, and that his salary would be from $100 to $125 per month the first year, and selected a place suitable for him to move his family to—either Kirksville or Columbia, Missouri.

He farther states that he at once telegraphed directly to appellants that he would be up the first of the next week to accept the position. He came to St. Louis and saw Carter, who introduced him to the Andersons, and after some conversation with Carter he was told by him that he had better see the elder Anderson, as he might have something to say to him.

Regarding this interview, Mr. Anderson testifies: "Before he started on the trip he was brought to me and I asked him if he would sign a written contract for the firm as to the pay for his work, telling him it was customary with us to have a written agreement with a salesman.

"He said that he preferred to make a trial trip with the understanding that the firm would pay what his services were worth; that he had never been over the route and did not know whether he would like it or not, and that on his return he could arrange about his salary in the future, and was satisfied the firm would pay him what his services were worth and that would be satisfactory.

"This was the only agreement made by the firm and the only conversation he had with any member of the firm in regard to wages before he started on his first trip."

The appellee in his direct examination says: "I went to see Mr. Anderson and he said: 'I am satisfied with your character through Carter; I have nothing to say to you in particular.'" But on cross-examination he further says: "Before I went out on my first trip the old man Anderson did say to me that it was customary with them for men when starting out to sign a contract, and I might have said that I preferred making a trial trip. I did not agree to accept a commission of four per cent.; if that was said by the old gentleman when he said it was customary to sign a contract, or at any other time, I did not hear it." On his first trip of five weeks he made no money for the house, his expenses being more than the profits on his

sales. He went upon another trip and was gone about the same length of time, without, as he says, any other or different arrangements being made regarding compensation, while the younger Mr. Anderson testifies that he was to work upon a commission of four per cent. upon the amount of his sales. On this trip he was as unfortunate as at first in not making any money for the appellants.

The appellants declined to pay him the salary claimed by him, on the ground that no contract for a salary existed between them, and he quit work and brought this suit and recovered for the whole time on the basis of a special contract for at least $100 per month and expenses, and the defendants below appealed. It is argued in his behalf that Carter was the agent of the appellants to employ traveling salesmen, and that the letter of Carter to him contained a proposition which, when accepted by appellee, became a valid contract for service at a salary of not less than $100 per month and expenses.

Conceding that the contents of the letter were as stated by him, although this is expressly denied by Carter, we are not convinced that it should have the construction contended for.

The appellee had written Carter asking him if he knew of any opening for him, and this letter in reply was written to advise him that appellant needed a man, and stating the territory that was vacant and that the salary would be between certain limits and requesting him to come up at once. As an answer to the inquiry of appellee, it is quite explicit in informing him of an opening for him and stating its advantages and the probable salary he would receive, but does not purport, when the circumstances under which it was written are considered, to be an absolute proposition to hire the appellee.

It contemplates further action before the amount to be paid should be fixed. And it is very evident from the proof that the parties themselves did not treat it as amounting to a special contract of hiring, for when the appellee first came to appellants' place of business he was asked to enter into a written contract fixing the terms of the hiring, and he preferred to make a trial trip, trusting to the honor of the firm to pay what his services would be worth.

Anderson & Co. v. Dezonia.

That he went upon his first trip under the above arrange-ment is very clear from the evidence, and by so doing he abandoned any claim to be paid the amount named in the let-ter of Carter as the probable salary he would receive, and for his services during that time he must be limited in his recov-ery to their reasonable value.

The only testimony that tends to show that a new arrange-ment was entered into after his return and before he started out upon his second trip, is that of the younger Mr. Anderson, who says that he was to work upon a commission of four per cent. upon gross amount of sales and pay his own expenses. If this testimony is not to be considered as proving a special contract for services performed over the denial of appellee that any such was made, then it leaves the appellee without any special contract as to compensation during all the time of his employment, and the measure of his recovery would be determined from the value of his services.

It is very evident that the recovery in this case was had upon the special contract relied upon, and finding as we do from the evidence in the record that no such contract existed between the parties, it follows that error was committed by the court in not awarding a new trial, and the judgment will therefore be reversed and the cause remanded.

*Judgment reversed.*